UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO MCQUEEN,

       Plaintiff,

v.

DIANNA MUELLER,

       Defendant.

Case No. 14-CV-391-JPS

ORDER

1. INTRODUCTION

The plaintiff, Antonio McQueen, a prisoner proceeding *pro se*, filed a complaint under 42 U.S.C. § 1983 alleging that the defendant, Dianna[1] Mueller ("Mueller"), was deliberately indifferent to his serious medical needs. (*See* Docket #1). Before the Court is the defendant's motion for summary judgment (Docket #32). As will be discussed more fully below, the Court finds that the defendant is entitled to judgment as a matter of law, and thus will grant the defendant's motion for summary judgment.

2. SUMMARY JUDGMENT LEGAL STANDARD

"When a party files a motion for summary judgment, it [represents the party's] 'contention that the material facts are undisputed and the movant is entitled to judgment as a matter of law.'" *Flint v. City of Milwaukee*, — F. Supp. 3d —, 2015 WL 1261245, at *2 (E.D. Wis. Mar. 20, 2015) (quoting *Hotel 71 Mezz Lender LLC v. Nat. Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015)). "Material facts" are those facts which "might affect the outcome of the suit," and "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return

---

[1] The defendant points out that the correct spelling of her name is "Diana." (Docket #35 at 1).

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, to have a genuine dispute about a material fact, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 474 U.S. 574, 586 (1986); namely, the party in opposition "must set forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e).

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4). When analyzing whether summary judgment should be granted, a court must draw all reasonable inferences from the materials before it in favor of the non-moving party. *See Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989).

3. DISCUSSION

    3.1    The Facts[2] and the Parties' Arguments

Prior to his instant incarceration, the plaintiff was hit by a car on either April 4, 2013, or April 23, 2011[3]; both his tibia and fibula in his left leg were shattered in the accident. In August of 2013 he was transferred to the House of Correction ("HOC") in Franklin, Wisconsin. During his stay at the HOC, he repeatedly and regularly complained of pain in his left leg and other pain that he attributed to after-effects of the accident. On April 4, 2014, he filed the instant suit, alleging that the HOC and Mueller were deliberately indifferent to his serious medical needs. The Court screened the plaintiff's complaint, pursuant to 28 U.S.C. § 1915A(a), and allowed him to proceed only on his deliberate indifference claim against Mueller. (*See* Docket #15).

The substance of the plaintiff's complaint—which is the only document the Court has to work from because the plaintiff did not file a brief in opposition or proposed findings of fact[4]—alleges that the defendant failed to heed his repeated complaints of pain and provide him adequate care. Specifically, the plaintiff alleges that he was seen by members of the Health Services Unit ("HSU") at the HOC and was given a variety of over-the-counter pain medications which failed to alleviate his pain. According to the plaintiff, he told Mueller "what happened [to him], and told her that [he] still

---

[2]The Court will summarize the facts and cite to the record as appropriate.

[3]The plaintiff's complaint states it was April 4, 2013 (*see* Docket #1 at 3); the medical report from an outside specialist states the accident occurred April 23, 2011 (*see* Docket #39-1 at 5).

[4]Nevertheless, the plaintiff is *pro se* and thus the Court must construe his filings and arguments liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

need[ed] therapy, pain management, and surgery." (Docket #1 at 3). The plaintiff concedes, however, at various times, that the pain he felt was "phantom pain." *Id.* He attributes a variety of the decisions that were made regarding his care to individuals other than Mueller (*see* Docket #1 at 3) ("Salley stated there is nothing we can do[,] so she put me on tylenol extra strength."); *id.* at 4 ("Lieutenant Gonzalez and a nurse threw me in a wheel chair and rolled me backwards.").

In lieu of filing a brief in opposition to the defendant's motion for summary judgment, the plaintiff filed evidence he believes proves the deliberate indifference of the defendant—namely, treatment records from his stay at the HOC, records from care he later received at Dodge Correctional Institution, along with information regarding the accident and original treatment of his injuries.

The defendant, for her part, argues that she is entitled to summary judgment because she never actually treated the plaintiff. (Docket #35 at 7). In support of that contention, the defendant offered her own affidavit, stating that she never provided care for the plaintiff. (*See* Docket #33). And, the defendant also submitted the affidavit of another nurse practitioner, Dorothy Koenig ("Koenig"), which describes the treatment Koenig and others in the HSU gave to the plaintiff between August 23, 2013, and August 6, 2014. (*See* Docket #34).

The defendant also argues that, regardless of who treated the plaintiff, he cannot show deliberate indifference because his treatment records reflect that he was seen, treated, given medication, and provided various accommodations in an effort to alleviate his pain. (Docket #35 at 8-10). According to Koenig's affidavit, the plaintiff was seen at least twenty-seven times between August 2013 and August 2014. (*See* Docket #34). He was given

Page 4 of 13

Case 2:14-cv-00391-JPS   Filed 05/27/15   Page 4 of 13   Document 43

the following medicines: ibuprofen, naproxen (at increasing dosages), Elavil (at increasing dosages), amitryptiline, salsalate, and extra strength tylenol. (Docket #34 at 2-5) (*see also* Docket #36 at 2-6). The plaintiff was seen by a variety of individuals at the HSU, including: social workers (for pain as well as psychiatric care), registered nurses, doctors, nurse practitioners, and case managers. *Id.* He was also provided various accommodations, including crutches, an additional mattress, and a lower bunk and lower tier. *Id.*

Additionally, after six months in the HOC (on February 25, 2014), the plaintiff was referred to outside medical professionals for an evaluation. (Docket #36 at 4); (Docket #39-1 at 5-6). A physician's assistant and a physician assessed the plaintiff's complaints of chronic pain. (Docket #39-1 at 5-6). The report of that visit states, in pertinent part:

> At this time, [the plaintiff] has complete interval healing of his left tibia. I explained to him that any of the aching and discomfort at this time are not something that would be treated with surgery. This type of discomfort is not atypical. *They need to be managed with over-the-counter medications. I would not recommend the use of narcotics. I would not limit his activities to the left tibia.*…I would give him no restrictions in terms of the right knee.…We would recommend over-the-counter use of Tylenol or NSAIDs to manage his symptoms. He can use his crutches as needed, but he certainly does not need those for his left lower extremity injury.
>
> …
>
> Please note…that we would not consider the fracture of the tibia to be the source of disability for this patient.

*Id.* (emphasis added). The affidavit of Koenig also notes that at various times, mostly in 2014, the plaintiff refused medical care, which the defendant argues necessarily undermines the plaintiff's claim. (*See* Docket #34).

Finally, the defendant argues that the plaintiff's condition was not "a serious medical need." (Docket #35 at 10-11). According to the defendant,

"[h]is leg had been and was being monitored. There was nothing life-threatening about the state of his left leg. In fact the medical records reflect his leg was completely healed." *Id.* at 11. Thus, the defendant argues that the plaintiff's condition was not a serious medical need, and without meeting this prong of the deliberate indifference test, the plaintiff's claim cannot survive summary judgment.

The Court, for purposes of its analysis below, will assume that the plaintiff's condition was a serious medical need, despite the defendant's protestation to the contrary. This is so because: (1) the defendant's argument that it is not a serious medical need is underdeveloped and thus unconvincing; and (2) ultimately, even if the plaintiff's condition was a serious medical need, the outcome of the plaintiff's claim remains the same.

3.2     Deliberate Indifference Legal Standard

"The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners from prison conditions that cause the 'wanton and unnecessary infliction of pain,' including…grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)) (internal citations omitted). The prisoner has the burden "to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 325 (1986)).

To proceed on an Eighth Amendment deliberate indifference claim, the plaintiff must allege that "his condition was objectively serious" and "state officials acted with the 'requisite culpable state of mind, deliberate indifference,' which is a subjective standard." *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A condition is objectively serious "if a physician has diagnosed it as requiring

Page 6 of 13

Case 2:14-cv-00391-JPS    Filed 05/27/15    Page 6 of 13    Document 43

treatment, or the need for treatment would be obvious to a layperson." *Pyles*, 771 F.3d at 409; *see also Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.").

"To demonstrate that a defendant acted with a 'sufficiently culpable state of mind,' a plaintiff must put forth evidence to establish that the defendant knew of a serious risk to the prisoner's health and consciously disregarded that risk." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). This subjective standard requires "[s]omething more than negligence or even malpractice," *Pyles*, 771 F.3d at 409, and "it approaches intentional wrongdoing." *Holloway*, 700 F.3d at 1073.

When it comes to medical care in the prison setting, "prisoner[s] [are] not entitled to receive 'unqualified access to healthcare,'" *id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); instead, "prisoners are entitled only to 'adequate medical care,'" *id.* (quoting *Johnson*, 433 F.3d at 1013)). Adequate medical care may involve care that the prisoner disagrees with; this disagreement alone is insufficient to establish an Eighth Amendment violation. *See Pyles*, 771 F.3d at 409. To establish deliberate indifference, the prisoner must demonstrate "that the treatment he received was 'blatantly inappropriate,'" *id.* (quoting *Greeno v. Daley*, 414 F.3d 645, 654 (7th Cir. 2005)); or, stated another way, that the treatment decision "represents so significant a departure from accepted professional standards or practices that it calls into question whether the [medical professional] was actually exercising his professional judgment," *id.* (citing *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir.

2011) and *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)); *Gayton*, 593 F.3d at 622-23.

If the plaintiff fails to provide enough evidence to show deliberate indifference, and it cannot be inferred from the medical professional's treatment, "the deliberate indifference question may not go to the jury." *Gayton*, 593 F.3d at 620, 623.

3.3 Analysis

The defendant is entitled to summary judgment on the claim against her for multiple reasons. It is worth pointing out at the outset, however, that the defendant's argument that she never treated the plaintiff is insufficient, standing alone, to grant summary judgment in her favor. Namely, the plaintiff has consistently alleged that the defendant treated him, notwithstanding the defendant's affidavit to the contrary. Because this is plainly a he-said, she-said, regarding a material fact—*i.e.* whether the defendant treated the plaintiff and thus could be deliberately indifferent—the defendant's attempt to brush away the plaintiff's complaint on this ground alone is unavailing. This is especially so given that the treatment records submitted by the defendant have instances where the nurse practitioner that treated the defendant is unnamed. This gives rise to the inference that the defendant *may have* treated the plaintiff. (*See, e.g.*, Docket #34 at 4) ("[The plaintiff] was referred to a nurse practitioner and his medication remained the same.").

That said, the Court is constrained to find that the plaintiff has failed to show *sufficient* personal liability on the part of the defendant to survive summary judgment. To wit, even assuming Mueller was involved in or was aware of the plaintiff's care at various times, the plaintiff has failed to show that Mueller acted or failed to act "'with deliberate or reckless disregard of

the plaintiff's constitutional rights.'" *Childress v. Walker*, No. 14-1204, slip op. at 10 (7th Cir. May 21, 2015) (quoting *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000)). While a dispute regarding the defendant's involvement in the plaintiff's care was insufficient, alone, to grant summary judgment in the defendant's favor, the lack of any evidence that Mueller played a substantial personal role—and thus a role that would give rise to liability—in the defendant's care is sufficient to grant summary judgment in her favor.

In reality, what the plaintiff alleges is a nebulous deliberate indifference claim against various officials at the HOC; however, this type of claim cannot survive summary judgment when the only named defendant remaining is Mueller.[5] *See Davis v. Wahl*, 596 Fed. Appx. 488, 489 (7th Cir. 2015) ("To avoid summary judgment on a claim of constitutionally deficient medical care, [the plaintiff] *must supply evidence that* [*the medical professional*] *both knew of and disregarded an excessive risk to his health.*") (citing *Farmer*, 511 U.S. at 837). Respondeat superior or "collective negligence" liability would only be possible if a *Monell* claim were before the Court; but, no such claim remains here.

And, even more importantly, the record before the Court fails to show—or, stated another way, no reasonable jury could find—that the treatment the plaintiff did receive evidences deliberate indifference by staff members at the HOC's HSU, regardless. The plaintiff was seen by various medical professionals who treated the plaintiff in disparate ways in an attempt to alleviate his pain, he was referred offsite for further evaluation

---

[5]The plaintiff avers that an officer can attest to the deliberately indifferent treatment that he received. (*See* Docket #1 at 3-4). While this may be true, the grievance the plaintiff filed as evidence and the response by the officer (*see* Docket #9-1 at 3, 4), do not implicate Mueller in any way; again, this does not suffice to show individual liability against Mueller, which is the only claim that remains.

(during which the current treatment of the plaintiff was found to be the correct course), and the evidence shows that the plaintiff went no longer than a month without being seen.

At bottom, the plaintiff's claim appears to evidence a difference of opinion between himself and the medical staff at the HOC regarding how he should be treated. This does not suffice to show deliberate indifference. *See Pyles*, 771 F.3d at 409 ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation.") (citing *Johnson*, 433 F.3d at 1013).

In addition, the plaintiff's medications were repeatedly changed and various methods were attempted to alleviate the plaintiff's pain (which the plaintiff admits may have been phantom pain, thus making it unclear if it could have been treated at all[6]). There is simply no evidence that Mueller, or anyone at the HSU, proceeded with an unchanging course of treatment that they knew was not working. Lacking this, the Court cannot find the treatment the plaintiff did receive evidences deliberate indifference by Mueller or anyone. *See Pyles*, 771 F.3d at 412 ("When [the plaintiff] complained that his medications were not helping, [the doctor] responded by prescribing new medications or changing the dosages. [The plaintiff] may have wanted different treatment, but his disagreement…does not allow him to prevail on his Eighth Amendment claim."). The plaintiff's treatment record is replete with visits from and to health professionals, as well as documented

---

[6] *See Phantom Pain Treatment and Drugs,* Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/phantom-pain/basics/treatment/con-20023268 (last visited May 26, 2015) *(*"Finding a treatment to relieve your phantom pain can be difficult.").

Page 10 of 13

Case 2:14-cv-00391-JPS   Filed 05/27/15   Page 10 of 13   Document 43

responses to his requests; conversely, the plaintiff has not offered *any* evidence to show inattention to his needs or the culpability necessary to shore up his deliberate indifference claim.

The plaintiff also strenuously argues that the failure of the HOC's HSU staff to refer him to a specialist for his pain evidences deliberate indifference. The Court disagrees for two reasons. First, the plaintiff has not shown that the decision not to refer him was that of Mueller. This, by itself, is fatal to his claim. Second, even if it was Mueller's decision, the Court cannot find that the delay caused the plaintiff "needless suffering." *Davis*, 596 Fed. Appx. at 490 (citing *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009)). Nor is a referral to a specialist necessarily required, in any event, especially when the prisoner's condition is a common ailment. *See Pyles*, 771 F.2d at 411, 412 (noting that "[a] prison physician is not required to authorize a visit to a specialist in order to render constitutionally acceptable medical care," which may be especially true when the prisoner suffers from a "common ailment").

Moreover, when the plaintiff was eventually seen by outside specialists, they recommended a similar course of treatment and explicitly stated that neither surgery nor narcotic medications were warranted (Docket #39-1 at 5-6); surely the plaintiff wanted stronger medication, and he indicates as much, but a desire for narcotic pain medication when a doctor has found it unwarranted cannot give rise to an Eighth Amendment claim. *See Holloway*, 700 F.3d at 1073. And, even were the Court to assume that the defendant or individuals at the HOC delayed sending the plaintiff to an outside specialist, there is no evidence that this delay was anything other than negligence on their part; and, negligence alone cannot sustain a § 1983 claim.

The instant case is in some respects very similar to the scenario in *Davis*. There, the Seventh Circuit found that without evidence of needless suffering, and in light of an outside specialist's "recommend[ation of] treatment similar to what [other medical professionals] had been prescribing" before, the prisoner could not show deliberate indifference arising from a delay in referring the prisoner to an outside specialist. 596 Fed. Appx. at 490. And, this was supported even further in *Davis* by evidence that the plaintiff there had refused medical treatment. *Id.* ("[The plaintiff] has *refused* to consent to that procedure; his refusal undercuts his unsubstantiated assertion of harm.") (citing *Pinkston v. Madry*, 440 F.3d 879, 892 (7th Cir. 2006) and *Walker v. Peters*, 233 F.3d 494, 500 (7th Cir. 2000)). Here, just like in *Davis*, an outside specialist confirmed that the course of treatment for the plaintiff was correct, and there is also evidence that the plaintiff has refused medical treatment at times[7]; the outcome, then, must be the same as in *Davis*: the plaintiff has failed to show deliberate indifference on Mueller's (or anyone's) part.

In light of the foregoing, the Court is obliged to grant the defendant's motion for summary judgment. The plaintiff has not shown that the defendant was responsible for the decisions that he claims evidence that he was treated with deliberate indifference. Even assuming, *arguendo*, that the defendant *was* personally involved in some *non-de minimis* manner with the decisions regarding the plaintiff's treatment, the record of the extensive care the plaintiff received, coupled with his occasional refusals, cannot sustain a claim of deliberate indifference against the defendant. Most importantly, the

---

[7]These refusals, which may have contributed to his discomfort, also undermine his claim.

Court simply cannot find a single instance where Mueller, or any medical staff for that matter, refused to treat the plaintiff or acted with the requisite culpability—something more than negligence or medical malpractice. *Pyles*, 771 F.3d at 409; *Holloway*, 700 F.3d at 1073.

Consequently, for all of the reasons noted above, the defendant is entitled to judgment as a matter of law.

Accordingly,

IT IS ORDERED that the defendant's motion for summary judgment (Docket #32) be and the same is hereby GRANTED and this matter be and the same is hereby DISMISSED with prejudice.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of May, 2015.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge